UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 15-23491-CIV-MORENO

POMPANO IMPORTS, INC. D/B/A VISTA
MOTOR COMPANY,

        Plaintiff,

vs.

BMW OF NORTH AMERICA, LLC, and
AUTO COMPANY XXVII, INC. D/B/A
BMW OF DELRAY BEACH,

        Defendants.
_____/

## ORDER RECONSIDERING PLAINTIFF'S MOTION FOR REMAND

THIS CAUSE came before the Court upon Defendants BMW of North America LLC's and Auto Company XXVII, Inc. d/b/a BMW of Delray Beach's Motions to Dismiss Plaintiff Pompano Imports, Inc. d/b/a Vista Motor Company's six-count Complaint. Defendants' primary argument is that Counts I–IV should be dismissed because this Court is not the proper venue for determining in the first instance whether Defendants can establish and license a new BMW dealership. Defendant BMW of North America further argues that Counts V and VI should be dismissed because it has no contractual obligation to allow Plaintiff to open a "Lifestyle Boutique" and because Plaintiff failed to make a proper written request for a reimbursement change under Section 320.696, Florida Statutes.

Upon a review of the record while considering Defendants' Motions to Dismiss, the Court had cause to reconsider its prior ruling denying Plaintiff's Motion for Remand. In that motion, Plaintiff argued that Defendants cannot establish that Plaintiff fraudulently joined a non-diverse defendant—BMW of Delray Beach—in a preemptive attempt to defeat the Court's

"diversity of citizenship" jurisdiction. *See* 28 U.S.C. § 1332. The Court denied the Motion for Remand, but it continues to have an independent obligation "to determine [or reconsider] whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Upon reconsideration, and although the Court finds much merit in Defendants' Motions to Dismiss, it nevertheless finds that Defendants have not demonstrated by "clear and convincing evidence" that "there is no possibility" that Plaintiff can establish a cause of action against BMW of Delray Beach. Accordingly, the Court has no choice but to **GRANT** Plaintiff's Motion to Remand and **REMAND** this case to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

I.  **BACKGROUND**

   A. **Relevant Facts**

This case arises out of a decision by Defendant BMW of North America, LLC to establish Defendant Auto Club XXVII, Inc. ("BMW of Delray") as a new BMW dealership on Linton Boulevard in Delray Beach, Florida. BMW of Delray is not currently licensed or in operation. Plaintiff Pompano Imports, Inc. ("Vista"), a "licensed distributor" of both BMW passenger cars and Sports Activity Vehicles, owns and operates two BMW dealerships in Broward County, one in Coconut Creek and one in Pompano Beach. Vista is a Florida corporation with its principal place of business in Florida. BMW of North America is a Delaware limited liability company with its principal place of business in New Jersey. BMW of Delray is a Delaware corporation with its principal place of business in Florida.

Two franchise agreements govern the relationship between BMW of North America and Vista—the Dealer Agreement and the Sports Activity Vehicle Center Agreement[1] (collectively,

---

[1] The Sports Activity Vehicle Center Agreement is governed by New Jersey law. D.E. 13-5 at 81 ("This Agreement shall be deemed to have been entered into in the state of New Jersey

2

the "Dealership Agreements").  Neither agreement was attached to Vista's Complaint.  In the Dealership Agreements, BMW of North America "reserve[d] the right to appoint additional dealers, whether located near Dealer's location or elsewhere, as BMW NA in its sole discretion deems necessary and appropriate."  Nevertheless, Vista has filed this lawsuit to prevent BMW of North America from establishing BMW of Delray as a competing dealership.

The Florida Legislature has established a statutory scheme that governs the relationship between motor vehicle franchisors and their franchisees and the licensing of new dealerships, and has given the Florida Department of Highway Safety and Motor Vehicles (the "Department") the authority to enforce that scheme. *See* Fla. Stat. §§ 320.60–.70; Fla. Stat. §§ 320.27, 320.642.  Under this scheme, when a "licensee" (defined as any "manufacturer, factory branch, distributor, or importer" of motor vehicles) proposes to establish a new dealership, the licensee must "give written notice of its intention [to establish a new dealership] to the [D]epartment." Fla. Stat. §§ 320.61(1), 320.642(1).  Upon receiving that notice, the Department is charged with both publishing notice and sending notice to other dealerships of the same line-make within a certain radius of the proposed new dealership.  *See* Fla. Stat. § 320.642(1).  Dealerships within that radius may file a protest with the Department.  *See id.*  If they do, then the Department must deny the proposed new dealership a license unless the licensee demonstrates that "the existing franchised dealer or dealers . . . are not providing adequate representation of [the] line-make motor vehicles in [the] community or territory." Fla. Stat. § 320.642(2)(a).

---

and shall be construed and interpreted in accordance with New Jersey law.  Furthermore, any questions as to the validity of this Agreement, the performance of its terms and conditions, or of any contractual rights or obligations of the parties to this Agreement, shall be governed by and resolved in accordance with New Jersey law.").  The Dealer Agreement does not contain a similar choice-of-law provision. *See generally* D.E. 13-4.

## B. Procedural History

As required by Florida law, BMW of North America notified the Department of its intent to establish BMW of Delray as a new BMW dealership in early July 2015. On July 24, 2015, the Department published notice of that intent and also mailed notice to Vista.

On August 19, 2015, Vista filed a six-count Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. BMW of Delray is a defendant to Counts I and II only; BMW of North America is a defendant to all counts. Counts I and II are substantively the same—one relates to BMW passenger cars and the other relates to BMW Sports Activity Vehicles—and seek a declaration (a) that BMW of North America "cannot meet its burden of proof to establish that the existing franchised dealers who register new retail sales or retail leases of BMW passenger cars [or Sports Activity Vehicles] in the community or territory of the Proposed Linton Boulevard Dealership are not adequately representing [BMW of North America] in such community or territory," and (b) that the "Proposed Linton Boulevard Dealership may not be approved [by the Department] pursuant to Florida Stat. § 320.642." Counts III and IV are also substantively the same; one relates to BMW passenger cars and the other to BMW SAVs. These claims seek an injunction preventing BMW of North America from establishing BMW of Delray based on BMW of North America's inability to demonstrate that it is not adequately represented by the existing dealerships. Count V is for breach of contract. It alleges that BMW of North America breached the Dealership Agreements with Vista by refusing to "authorize Vista to open a BMW 'Lifestyle Boutique' in Delray Marketplace." Finally, in Count VI, Vista alleges that BMW of North America violated Section 320.696, Florida Statutes, by refusing to approve Vista's "request for an increase in its warranty parts reimbursement rate."

BMW of North America removed the case to this Court on September 17, 2015. In its Notice of Removal, BMW of North America asserted that Vista "fraudulently joined" BMW of Delray to the state court action in a preemptive attempt to defeat this Court's diversity jurisdiction under 28 U.S.C. § 1332. The next day, Vista filed a Motion to Remand the case back to state court, arguing that Counts I and II are "viable" claims against BMW of Delray, and that therefore BMW of Delray was not fraudulently joined to the state court action. The Court denied Vista's Motion to Remand on October 7, 2015.

Two days after filing its Complaint, Vista also filed protests with the Department pursuant to Section 320.642, thereby preventing BMW of Delray from becoming licensed. *See* D.E. 44 at 3; Fla. Stat. § 320.642(2)(a). Vista stated in its protests that they were filed "as a protective measure and in an abundance of caution to preserve [Plaintiff's] rights," but requested that the protests be stayed pending resolution of the instant action. *Id.* The Department referred the matter to the Florida Department of Administrative Hearings ("DOAH"), which denied Vista's motion to stay the protests from moving forward. *See generally* D.E. 13-3 at 3. In denying Vista's motion, the Administrative Law Judge held that "the straightest and shortest (if not the only) path to . . . [approval of the new dealership] is this administrative proceeding." *Id.* Thereafter, Vista asked this Court to stay or enjoin the DOAH proceedings. The Court denied that motion on November 10, 2015. The DOAH has scheduled the evidentiary hearing on Vista's protests for March 2016. *See* D.E. 21 at 4; D.E. 22 at 4.

### C. Defendants' Motions to Dismiss

Finally, BMW of North America and BMW of Delray each filed a Motion to Dismiss Vista's Complaint. *See* D.E. 13, 14. Below is a summary of the parties' arguments as to each of the six counts.

5

i. Counts I–IV

With respect to Counts I, II, III, and IV, Defendants make several arguments. Their first argument is that Section 320.642 grants to the Department exclusive jurisdiction over the adequacy-of-representation determination, and that therefore neither Florida's Declaratory Judgment Act (as to Counts I and II) nor Section 320.695, Florida Statutes (as to Counts III and IV) gives the Court jurisdiction. *See* D.E. 13 at 4–8; D.E. 14 at 7–12. Vista responds that the Department does not have exclusive jurisdiction over the adequacy-of-representation determination, but that the Court can exercise "concurrent jurisdiction" over that issue. *See* D.E. 38 at 7–13.

Defendants next argue that Counts I and II should be dismissed because Vista has—and has already availed itself of—a prescribed administrative remedy and therefore does not have a bona fide, actual, present, or practical need for a declaratory judgment.[2] Vista, according to Defendants, is attempting to use Florida's Declaratory Judgment Act to obtain a de facto injunction against the Department, and Florida courts routinely dismiss declaratory actions that

---

[2] Under Florida law, "in order to properly invoke the jurisdiction of the circuit court, the party seeking a declaration must not only show that he is in doubt as to the existence or nonexistence of some right or status, but also that there is a *bona fide, actual, present, and practical need for the declaration*." *Fla. Dep't of Envtl. Prot. v. Garcia*, 99 So. 3d 539, 544 (Fla. 3d DCA 2011) (emphasis added); *see also Spink v. McConnell*, 529 So. 2d 813, 814 (Fla. 1st DCA 1988) ("It is axiomatic that a declaratory judgment is not appropriate where there is not a bona fide dispute between contending parties that presents a justiciable question.") (citing *Bryant v. Gray*, 70 So. 2d 581 (Fla. 1954)). Thus, a declaratory judgment action is not proper where an administrative remedy is available. *See Spink*, 529 So. 2d at 814 ("The Declaratory Judgment Act may not be extended to a point where it might be substituted for another appropriate action in the absence of a bona fide foundation for a declaratory judgment."); *see also, e.g., School Bd. of Flagler Cty. v. Hauser*, 293 So. 2d 681, 682 (Fla. 1974) ("[T]he declaratory decree statute is not a substitute for certiorari to review an administrative order of a state board or agency."). This also means that, "as a general proposition, the circuit court should refrain from entertaining declaratory suits except in the most extraordinary cases, where the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains available under [the Administrative Procedure Act]." *Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc.*, 361 So. 2d 695, 699 (Fla. 1978).

constitute an "end run" around the administrative process.[3] Vista argues, however, that Florida's Declaratory Judgment Act expressly provides that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief" and that Florida's Administrative Procedure Act preserves the right of Florida circuit courts to render declaratory judgments notwithstanding the availability of administrative remedies. *See* Fla. Stat. § 86.111; Fla. Stat. § 120.73 ("Nothing in this chapter shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing or to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86."). Therefore, Vista argues that it does not have to exhaust its administrative remedies to have a bona fide, actual, present, and practical need for a declaration.[4]

BMW of North America further argues that Counts III and IV should be dismissed because BMW of North America has not violated or threatened to violate Section 320.642, and therefore there is nothing to enjoin.[5] BMW of North America argues that Section 320.642's provisions are procedural—i.e. they lay out an administrative procedure that a licensee must

---

[3] This is especially so "when coercive relief, not a declaration of some doubtful right or status, is plaintiff's real objective." *School Bd. of Leon Cty. v. Mitchell*, 346 So. 2d 562, 563, 569 (Fla. 1st DCA 1977) (holding that the circuit court "should have granted the motion to dismiss" because plaintiff could have had the issue underlying her declaratory judgment action resolved through the remedies available to her under the Administrative Procedure Act); *see also Florida Hotel & Rest. Comm'n v. Marseilles Hotel Co.*, 84 So. 2d 567, 569 (Fla. 1956) (holding that plaintiff's declaratory action should be dismissed because "it is clear that the real and only purpose of the suit was to enjoin" the license revocation hearing). Notably, Plaintiff already moved the Court to stay, or in the alternative *enjoin*, the DOAH hearing "to preserve this Court's jurisdiction." *See* D.E. 1-4 at 2. The Court denied this Motion. *See* D.E. 44.

[4] *See Angelo's Aggregate Materials, Ltd. v. Pasco Cty.*, 118 So. 3d 971, 974 (Fla. 2d DCA 2013); *Orange Cty. v. Expedia, Inc.*, 985 So. 2d 622, 629 (Fla. 5th DCA 2008).

[5] Under Section 320.695, a motor vehicle dealer "is authorized to make application to any circuit court of the state for the grant, . . . , of a temporary or permanent injunction, . . . , restraining any person . . . from *violating* or *continuing to violate* any of the provisions of [the Dealer Act], or from *failing* or *refusing to comply* with the requirements of this law." Fla. Stat. § 320.695 (emphasis added).

7

follow if it wishes "to establish an additional motor vehicle dealership" in a given "community or territory"—and that so long as BMW of North America complies with the Section 320.642's prescribed procedure, BMW of North America does not violate Section 320.642 simply because it is later determined that BMW of North America is adequately represented by existing dealerships. Fla. Stat. § 320.642(1). According to Vista, however, "the word 'violating' encompasses an impending violation" and "a party generally need not wait for a violation to occur before seeking injunctive . . . relief." D.E. 38 at 15. Vista also argues that it "seeks to prevent the inevitable injury that will occur should [BMW of North America] establish the proposed dealership when other dealers are already adequately representing BMW" and that this is "exactly the type of harm injunctions exist to prevent." *Id.* at 15–16.

Finally, under the primary jurisdiction doctrine, Defendants argue that Counts I–IV should be dismissed because the Court should defer to the Department in an effort "to maintain uniformity at [the administrative] level [and] to bring [the Department]'s specialized expertise to bear upon the disputed issues." *Hill Top Developers v. Holiday Pines Serv. Corp.*, 478 So. 2d 368, 370 (Fla. 2d DCA 1985). Indeed, it appears that the Department has exclusively handled all Section 320.642 protests and that no court has ever decided the adequate representation issue in the first instance. Vista argues, however, that there are no factual issues arising in connection with the adequate representation issue that requires specialized expertise, and that therefore the primary jurisdiction doctrine is inapplicable.

    ii. **Count V**

In Count V, Vista claims that BMW of North America breached the Dealership Agreements by refusing to allow Vista to open a BMW "Lifestyle Boutique" in the Delray Marketplace. The parties have identified three provisions from the Dealership Agreements that

8

are relevant to Count V. First, the Dealership Agreements explicitly designate Vista to operate two dealerships—one in Coconut Creek, Florida and the other in Pompano Beach, Florida—and any "additional locations" require BMW of North America's "prior written approval." The Dealership Agreements also state that Vista can use the trademarks "in connection with the promotion and sale of BMW Products . . . only in such manner, at such location, to such extent, and for such purposes as BMW NA may specify from time to time." Finally, the Sports Activity Vehicle Center Agreement provides that BMW of North America "will assist [Vista] in [Vista]'s BMW SAV Operations through such means and upon such terms and condition as BMW NA *considers necessary and appropriate*" and defines "BMW SAV Operations" as, among other activities, "all activities of [Vista] relating to the promotion and sale of BMW Products." D.E. 13-5 at 25, 30 (emphasis added).

BMW of North America argues that these provisions unambiguously demonstrate that BMW of North America was within its rights under the Dealership Agreements, as a matter of law, when it refused to allow Vista to open the Lifestyle Boutique.[6]  Vista responds that dismissal is inappropriate because BMW of North America "had an obligation, at a minimum, to assist Vista in promoting and selling its BMW vehicles, which Vista was attempting to do through its proposed Lifestyle Boutique." D.E. 38 at 18.

---

[6] *See, e.g., Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 479 (D.N.J. 2014) ("Under New Jersey's rules of contract interpretation, 'the terms of an agreement are to be given their plain and ordinary meaning.'") (quoting *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002)); *Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1266 (S.D. Fla. 2007) (citing *Friedman v. Virginia Metal Prod. Corp.*, 56 So. 2d 515, 516 (Fla. 1952)).

### iii. Count VI

Vista's last claim, Count VI, is for damages pursuant to Section 320.697, Florida Statutes against BMW of North America for violation of Section 320.696.[7] Under Section 320.696, a licensee has an obligation to "timely compensate" motor vehicle dealers who perform "work to maintain or repair a licensee's product under a warranty or maintenance plan, extended warranty, certified pre-owned warranty, or a service contract, issued by the licensee or its common entity." Fla. Stat. § 320.696(1)(a). As part of this obligation, a licensee must "compensate a motor vehicle dealer for parts used" in any warranty work performed by the dealer, and that compensation may include "an agreed percentage markup over the licensee's dealer cost." Fla. Stat. § 320.696(3)(a). If, however, "an agreement is not reached [as to the percentage markup] within 30 days after a dealer's written request," then as relevant to this case, the reimbursement markup is as follows:

> The dealer's arithmetical mean percentage markup over dealer cost for all parts charged by the dealer in *50 consecutive retail customer repairs made* by the dealer within a *3-month period before the dealer's written request* for a change in reimbursement pursuant to this section, or all of the retail customer repair orders over that 3-month period if there are fewer than 50 retail customer repair orders in that period. The motor vehicle dealer shall give the licensee 10 days' written notice that it intends to make a written request to the licensee for a warranty parts reimbursement increase and permit the licensee, within that 10-day period, to select the initial retail customer repair for *the consecutive repair orders that will be attached to the written request used for the markup computation*, provided that if the licensee fails to provide a timely selection, the dealer may make that selection.

Fla. Stat. § 320.696(3)(a) (emphasis added).

---

[7] Section 320.697 provides that "any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of [Sections 320.60–320.70, Florida Statutes] . . . has a cause of action against the licensee for damages and may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court." Fla. Stat. § 320.697.

10

BMW of North America's first argument for dismissal is that "50 consecutive" retail orders means 50 numerically consecutive repair orders, and that at least one of the repair orders (Number 621397) included in Vista's reimbursement rate calculation "clearly preceded" the repair order selected by Vista as its initial repair order (Number 626395). Vista responds that "50 consecutive retail customer repairs *made* by the dealer" means "50 consecutive repair orders as determined by the date the repair was actually 'made' and the repair order closed." D.E. 38 at 19 (emphasis added). BMW of North America also asserts that Vista did not attach the 50 consecutive repair orders to its January 21, 2015 letter requesting a reimbursement markup, and only did so in a subsequent letter dated March 23, 2015, which was "outside of the statute's applicable three-month period for timely submissions." Put another way, BMW of North America argues that Section 320.696(3)(a) contemplates a two-step process—a written notice followed by a written request with the 50 consecutive repair orders attached—and that Vista has failed to allege that it complied with step two of that process. Vista counters that it did provide the 50 consecutive repair orders, and that "whether Vista properly submitted repair orders and whether BMW NA was required to increase its reimbursement rate as a result, is a factual issue inappropriate for resolution [on a motion to dismiss]." D.E. 38 at 20–21.

II. **LEGAL STANDARD**

Subject-matter jurisdiction "involves a court's power to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage of the proceeding." *Univ. of So. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

"Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.*

The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A federal court has "diversity of citizenship" jurisdiction when there is complete diversity of citizenship among the parties and the plaintiff presents a claim that exceeds the required jurisdictional amount, currently $75,000. *See* 28 U.S.C. § 1332.

The burden of establishing federal jurisdiction falls on the party who is attempting to invoke the jurisdiction of the federal court. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Courts should strictly construe the requirements of 28 U.S.C. §1441 (removal jurisdiction) and remand all cases in which such jurisdiction is doubtful. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Moreover, removal statutes are construed narrowly, and when the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *see also Klempner v. Northwestern Mutual Life Ins. Co.*, 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001) ("A presumption in favor of remand is necessary because if a federal court reaches the merits of [a] pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts.").

### III. ANALYSIS

"An action filed in state court that is removed to federal court based on diversity jurisdiction 'must be remanded to state court if there is not complete diversity between the parties, or one of the defendants is a citizen of the state in which the suit is filed.'" *Shannon v.*

*Albertelli Firm, P.C.*, 610 F. App'x 866, 870 (11th Cir. 2015) (quoting *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011)). Complete diversity requires that "no plaintiff is a citizen of the same state as any defendant." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). There is no dispute that complete diversity is lacking in this case unless the citizenship of BMW of Delray is disregarded.

Defendants, however, argue that BMW of Delray's citizenship should be disregarded under the doctrine of "fraudulent joinder." Fraudulent joinder "is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *see also Stillwell*, 663 F.3d at 1332. To establish fraudulent joinder of a non-diverse defendant, the removing party must satisfy a "heavy" burden of proving by clear and convincing evidence that either "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell*, 663 F.3d at 1332. Defendants assert that BMW of Delray was fraudulently joined to the state court action because "there is no possibility that Vista would be able to establish a cause of action against [BMW of Delray]." D.E. 23 at 4.

The standard for assessing whether a plaintiff has the "possibility" of stating a claim against the non-diverse defendant "is a lax one." *Stillwell*, 663 F.3d at 1333. "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and *must resolve any uncertainties about state substantive law in favor of the plaintiff.*" *Crowe*, 113 F.3d at 1538 (emphasis added). In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an *arguable* one under state law." *Id.* (emphasis added). "If there is

13

even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Stillwell*, 663 F.3d at 1333 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983)). Thus, while the Defendants' burden to establish fraudulent joinder is a "heavy one," this Court should take a "very lenient" approach. *Ullah v. BAC Home Loans Servicing, LP,* 538 F. App'x 844, 946 (11th Cir. 2013).

Defendants argue that Vista has no possibility of stating a claim against BMW of Delray for two reasons: (1) the Department has exclusive jurisdiction over Section 320.642's adequate representation determination, and Vista has failed to exhaust its administrative remedies under the statute; and (2) the Court has no jurisdiction under the Florida Declaratory Judgment Act because Vista has no bona fide, actual, present, and practical need for the declaration. *See, e.g.*, D.E. 27 at 5. With respect to the first argument, while it is true that Vista has failed to exhaust its administrative remedies, it is not "crystal clear" that Vista is required to do so with respect to the adequacy-of-representation issue. D.E. 27 at 6. No court has held that the Department has exclusive jurisdiction over Section 320.642's adequacy-of-representation determination, but Florida courts have found that the Department does not have exclusive jurisdiction to make other determinations related to dealership franchising, including regarding the legality of the termination of a dealership. *See Barry Cook Ford, Inc. v. Ford Motor Co.*, 616 So. 2d 512, 516 (Fla. 2d DCA 1993) (holding that administrative action is not the exclusive remedy for disputes arising under Section 320.641); *see also Copans Motors, Inc. v. Porshe Motor Cars North America, Inc.*, No. 14-60413-CV, 2014 WL 2612308, *2–4 (S.D. Fla. June 11, 2014) (holding that an existing dealership did not waive its right to other remedies simply because it failed to protest Porsche's establishment of a new dealership under Section 320.642). For this reason, it

cannot be said for certain that Florida law imposes an obligation on Vista to exhaust its administrative remedies or that the Court has exclusive jurisdiction over the adequacy-of-representation issue.

With respect to the second argument, Florida's Declaratory Judgment Act "confers upon the circuit courts jurisdiction to render declaratory judgments as to the existence or nonexistence of any 'immunity, power, privilege or right.'" *Fla. Dep't of Envtl. Prot. v. Garcia*, 99 So. 3d 539, 544 (Fla. 3d DCA 2011) (quoting Fla. Stat. § 86.011). However, "in order to properly invoke the jurisdiction of the circuit court, the party seeking a declaration must not only show that he is in doubt as to the existence or nonexistence of some right or status, but also that there is a bona fide, actual, present, and practical need for the declaration." *Id.* (emphasis added); *see also Spink v. McConnell*, 529 So. 2d 813, 814 (Fla. 1st DCA 1988) ("It is axiomatic that a declaratory judgment is not appropriate where there is not a bona fide dispute between contending parties that presents a justiciable question.") (citing *Bryant v. Gray*, 70 So. 2d 581 (Fla. 1954)). The Court does have doubts about whether Vista has a bona fide, actual, present, and practical need for the declaration, especially given that Vista has already made use of Section 320.642's administrative procedure, thereby preventing—at least temporarily—the licensing of BMW of Delray. But given the "almost unlimited scope" of Florida's Declaratory Judgment Act, the Court cannot find that Vista has "no possibility" of establishing a bona fide, actual, present, and practical need for the declaration either. *Angelo's Aggregate Materials, Ltd. v. Pasco Cty.*, 118 So. 3d 971, 974 (Fla. 2d DCA 2013).[8] Therefore, Defendants have not demonstrated by clear and convincing evidence that Vista fraudulently joined BMW of Delray.

---

[8] "[T]he Declaratory Judgment Act specifically calls for its liberal construction, § 86.101, Fla. Stat. (2011), and dictates that the availability of another remedy does not preclude a declaratory judgment." *Angelo's Aggregate*, 118 So. 3d at 973 (citing Fla. Stat. § 86.111).

15

## IV.  CONCLUSION

For the foregoing reasons, Defendants have not shown that BMW of Delray's citizenship should be disregarded for the purposes of determining whether the Court has subject-matter jurisdiction.  Therefore, it is

**ADJUDGED** that Plaintiff Pompano Imports, Inc. d/b/a Vista Motor Company's Motion to Remand is **GRANTED**.  Accordingly, this Case is **REMANDED** to the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  The Clerk of the Court is hereby directed to take all necessary steps and procedures to effect the expeditious remand of the above-styled action.  It is also

**ADJUDGED** that all pending motions are **DENIED AS MOOT** in light of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th of March 2016.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record